# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| DIANA PITTS, | Case No. EDCV 18-01617-AS |
| Plaintiff, | **MEMORANDUM OPINION AND** |
| v. | **ORDER OF REMAND** |
| ANDREW M. SAUL, Commissioner of the Social Security Administration,[1] | |
| Defendant. | |

For the reasons discussed below, IT IS HEREBY ORDERED that, pursuant to Sentence Four of 42 U.S.C. § 405(g), this matter is remanded for further administrative action consistent with this Opinion.

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration and is substituted in for Acting Commissioner Nancy A. Berryhill in this case. See Fed.R.Civ.P. 25(d).

**PROCEEDINGS**

On August 2, 2018, Plaintiff filed a Complaint seeking review of the denial of her application for Disability Insurance Benefits and Supplemental Security Income. (Docket Entry No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 11-12). On December 13, 2018, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 15-16). On June 13, 2019, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 25).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On January 5, 2015, Plaintiff, formerly employed as a salesperson, cashier, stock clerk, driver and dispatcher (see AR 41, 54-58, 288-91), filed an application for Disability Insurance Benefits, alleging an inability to work because of a disabling condition since August 10, 2010. (See AR 203-04). On January 9, 2015, Plaintiff filed an application for Supplemental Security Income, alleging a disability since August 10, 2010. (See AR 205-10). The Commissioner denied Plaintiff's applications, initially and on reconsideration. (AR 119-27, 131-40). On June 27, 2017, the Administrative Law Judge ("ALJ"), Katherine Loo, heard testimony from Plaintiff (represented by counsel)

and an impartial vocational expert, Mary Jesko. (See AR 33-62).

On August 28, 2017, the ALJ issued a decision denying Plaintiff's applications. (See AR 15-23). Applying the five-step sequential process, the ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since August 10, 2010, her alleged onset date, through June 30, 2014, her date last insured. (AR 17). At step two, the ALJ found that through the date last insured, Plaintiff had the following severe impairments: "obesity, history of atelectasis, degenerative changes of the spine, hepatomegaly with fatty infiltration of the liver, folliculitis, early arthritis of the left knee, major depressive disorder, and substance abuse" (AR 18). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of any of the listings enumerated in the regulations.[2] (AR 18).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC")[3] and concluded that she had the capacity to perform medium work[4] with the following limitations: can frequently reach, handle, finger and feel; can occasionally climb ramps and stairs, stoop, kneel, crouch,

---

[2] The ALJ considered whether Plaintiff met the criteria of Listings 1.02, 1.04, 1.05, and 12.04, and concluded that she did not. (AR 18).

[3] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

crawl and interact with supervisors, coworkers and the public; can never climb ladders or scaffolds or work around hazards such as unprotected heights and moving machinery; can perform only simple, routine tasks; and must avoid concentrated exposure to respiratory irritants. (AR 19-22).

At step four, the ALJ found that Plaintiff was not able to perform any past relevant work (AR 22). Based on Plaintiff's RFC, age, education, work experience and the VE's testimony, the ALJ determined, at step five, that through the date last insured, Plaintiff could perform jobs existing in significant numbers in the national economy. (AR 22-23). Accordingly, the ALJ found that Plaintiff was not under a disability as defined in the Social Security Act, from August 10, 2010, the alleged onset date, through the date of the decision. (AR 23).

The Appeals Council denied Plaintiff's request for review on June 22, 2018. (See AR 1-5). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. See 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance.

Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001)(internal quotation omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).[5]

**PLAINTIFF'S CONTENTIONS**

Plaintiff alleges that the ALJ erred in failing to properly: (1) properly develop the medical record, and properly consider the medical evidence of record in assessing Plaintiff's RFC; and (2) consider Plaintiff's testimony in assessing Plaintiff's RFC. (See Joint Stip. at 3-9, 11-17).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that Plaintiff's second claim of error warrants a remand for further consideration. Since the Court is remanding the matter based on Plaintiff's second claim of error, the Court will not address

---

[5] The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(An ALJ's decision will not be reversed for errors that are harmless).

5

Plaintiff's first claim of error.

**A. The ALJ Did Not Properly Assess Plaintiff's Testimony**

Plaintiff asserts that the ALJ did not provide clear and convincing reasons for rejecting Plaintiff's testimony about her symptoms and limitations. (See Joint Stip. at 11-17). Defendant asserts that the ALJ properly discounted Plaintiff's testimony, and alternatively contends that any error in discounting Plaintiff's testimony was harmless. (See Joint Stip. at 17-19).

1. Legal Standard

Where, as here, the ALJ finds that a claimant suffers from a medically determinable physical or mental impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult . . . ." Soc. Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304, *3.[6]

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of

---

[6] SSR 16-3p, which superseded SSR 96-7p, is applicable to this case, because SSR 16-3p, which became effective on March 28, 2016, was in effect at the time of the Appeal Council's June 22, 2018 denial of Plaintiff's request for review. 20 C.F.R. § 404.1529, the regulation on evaluating a claimant's symptoms, including pain, has not changed.

6

the subjective symptoms. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her pain and symptoms only by articulating specific, clear and convincing reasons for doing so. Brown-Hunter v. Colvin, 798 F.3d 749, 755 (9th Cir. 2015)(citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)); see also Smolen, supra; Robbins v. Social Sec. Admin, 466 F.3d 880, 883 (9th Cir. 2006); Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Because the ALJ does not find that Plaintiff was malingering, the "clear and convincing" standard stated above applies.

Generalized, conclusory findings do not suffice. See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004)(the ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony") (citation and internal quotation marks omitted); Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001)(the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony"); Smolen, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.").

2.  <u>The ALJ's Credibility Findings</u>

Plaintiff made the following statements in a Function Report - Adult dated December 20, 2015 (<u>see</u> AR 301-09):

>   She lives in a rental house behind her friend's house. Her mental problems (depression, anxiety, etc.), respiratory problems, and blood clot in her leg limit her ability to work. Her friend filled out her Function Report because filling out the forms causes her to be stressed and overwhelmed. (<u>See</u> AR 301, 308).
>
>   With respect to her daily activities, she wakes up at 9 a.m. on good days (10 or 11 a.m. on bad days), eats cereal, watches television, cleans up, eats lunch, watches television, and then takes a nap. She does not take care of other people, but she feeds a dog. As a result of her conditions, she is no longer able to work, visit with friends, and celebrate holidays. Her conditions affect her sleep. She does not have any problem with personal care, and she does not need any reminders to take care of her personal needs and grooming and to take medicine. She daily prepares her own meals (cereal, microwave frozen meals), which takes a few minutes. Before her conditions began, she used to cook huge meals (she no longer enjoys preparing meals). On separate days she does laundry (2 times a week, takes 1/2 hour to fold), washes dishes (once a week, takes 1/2 hour), and vaccuums (every other day, takes 1/2 hour). She needs help or encouragement with her housework when she is depressed. She goes out on good days (for 1/2 hour), walking, driving a car, or riding in a car, but she does not go out on bad days. She drives, and can go out alone. She goes grocery shopping once every 2 weeks (takes 45 minutes). She is able to pay bills, count change, handle a savings account, and use a checkbook/money orders. Her interests are watching television (15 to 16 hours a day; prior to her conditions she watched 2 to 3 hours a day) and taking care of the dog. She does not spend time with others and does not go to any places on a regular basis. Her children do not visit her because she is depressed (which her children do not understand). Before her conditions began, she regularly went to parties with friends and had parties at home. (<u>See</u> AR 302-06).
>
>   Her conditions affect her abilities to squat, bend, walk, kneel, stair-climb, concentrate, understand (on bad days) and get along with others (she does not like to be around others). She can walk for 1 block before needing to rest, and can resume walking after resting for 5 minutes.

She cannot pay attention on bad days; she can pay attention for about one hour on good days. When she is following hard written instructions, she wants to quit. Sometimes (when stressed) she gets confused following spoken instructions. She gets along okay with authority figures. She has never been fired or laid off from a job because of problems getting along with other people. She is not able to handle stress well (she does not want to be with people), but she is able to handle changes in routine okay. Her unusual behavior or fear is fear of dying. She uses prescription glasses (last prescribed in 2014). She takes Trazodone, which causes her to suffer dry mouth and gain weight. (See AR 306-07).

Plaintiff gave the following testimony at the administrative hearing (see AR 37-58):

 She is 53 years old. She went to school until the 9th grade, and obtained her GED in 1989. Since March 2013 she has lived in her friend's deceased mother's house which is behind her friend's house. She helped take care of her friend's wife (keeping her company, making meals, feeding, administering medication, calling hospice) from October 2012 through May 2013 (when her friend's wife died); she started living at her friend's deceased mother's house in March 2013. She helped take care of her friend's mother (doing the same tasks) until December 2014 (when her friend's mother died). She helped take care of the two women in exchange for room and board starting in March 2013. She cleaned her friend's house (two times a month) in exchange for room and board until October 2016, at which time she was no longer able to do the cleaning. She currently gets food stamps and "medical." Her friend drove her to the hearing. (See AR 37-41).

 She worked at Walmart for five years, as a cashier (for two years), then in the ladies wear department, the infant department, as an overnight stocker, and in the cosmetics department. She went on medical leave because of a swollen left ankle; a cardiologist did an ultrasound and found a blood clot, and put her on blood thinners and a special diet. She returned to work after a vascular surgeon said the blood clot was gone. She worked until August 2010. She knew she was going to be let go after she failed to show up for work for three days because of an incident (about which she felt bad) in which she asked a cashier about the cashier's baby (who had died). She applied for other jobs and did not get hired, which caused her to get more and more depressed and to start isolating herself. (See AR 41-43, 54-56).

9

From 1997 to 2004, she worked as a driver and later as a dispatcher for a railroad. (See AR 56-58).

She is not able to work because of her knees (osteoarthritis), her weight, depression, anxiety, high cholesterol, Type 2 diabetes, and mitrovalve regurgitation. In May 2016, she saw an orthopedic surgeon and then waited for seven months to get surgery on her left knee (which did not happen on December 15, 2016 because she was sick). In May 2017, she began to see another orthopedist, who does not want to do surgery. She has received one injection in her left knee (June 2017), and she is going to receive an injection in her right knee (July 2017). The injection in her left knee helped for one day; her knees are still bubbled and she still has sharp pains. She has been prescribed, and is, taking a new pain medication. (See AR 43-49).

For almost five years she has seen a clinical therapist and a psychologist for depression and anxiety, and she takes extra classes (such as a class on mindfulness). She sees her psychologist for therapy every 4 to 6 weeks, sees a clinical therapist every other week, and sees another mental health professional every 14 weeks. She takes her psychiatric medications faithfully; the one time she stopped taking her medications for three days she did not want to do anything. Therapy and medication keep her stable. However, most of the time, she is depressed. (See AR 47-48, 50).

She has a history of acute bronchitis, but she does not have asthma. She has to use an inhaler twice a day. This past year, she went to the emergency room once due to shortness of breath, and in the past she has had to go to the emergency room a lot due to shortness of breath. She does not take insulin for her diabetes; she only has had to change her diet. She has not yet seen a cardiologist for the mitroal valve regurgitation. (See AR 49-50).

With respect to her daily activities, she can shower and take care of herself. She eats microwavable food. She mostly stays in her pajamas because of her depression. She can walk one block without a cane; with a cane she can walk one more block after resting for 2 to 3 minutes. With or without a cane, she is able to walk while carrying a little purse weighing about 5 pounds. After walking that second block, she goes home, goes into her room, turns on the television, and gets into bed. She can stand for about 15 minutes without a cane, and then has to lie down. She has difficulty sitting because of her knees. She cannot bend. (See AR 49-53).

She does not smoke, she drinks one beer a week, and she does not use illegal drugs. She took methamphetamine for about four years, and has been clean for more than one year (with only one relapse). (See AR 50-51).

10

After summarizing Plaintiff's testimony (see AR 19-20)[7] and Plaintiff's friend's testimony (see AR 20), the ALJ wrote: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 20). Following a discussion about the evidence of Plaintiff's psychiatric impairments, including the opinion of the State Agency psychiatric consultant (see AR 20), the ALJ wrote: "However, the evidence does not support more than moderate limitations in mental functioning. The claimant repeatedly reported doing better on

---

[7] The ALJ wrote:

> The claimant was born on February 18, 1964, has a GED (according to her testimony and Ex. 5F54), stands 5 feet and 4 inches tall, and weighs 253 pounds (Ex. 3E2). [¶] In or about January 2015, the claimant identified manic depression, a lung condition, and a heart problem as the conditions that caused her to stop working on the alleged onset date (Ex. 3E2). [¶] On December 20, 2015, the claimant reported depression, anxiety, a blood clot in her leg, and respiratory problems for which she used an inhaler (Ex. 11E1) and no problems with personal care (Ex. 11E2). She prepared her own meals, did light housework including laundry and vacuuming (Ex. 11E4), walked and drove for transportation, could go out alone, shopped in stores for groceries once every 2 weeks for 45 minutes, could handle money (Ex. 11E5), watched television all day, cared for her dog, did not spend time with others, did not go anywhere on a regular basis (Ex. 11E6), had problems with squatting, bending, walking, kneel[ing], climbing stairs, concentration, understanding, following instructions, and getting along with others (Ex. 11E7), and did not want to be around people (Ex. 11E8). She allegedly needed a friend to fill out the report because she felt stressed and overwhelmed (Ex. 11E9). [¶] . . . [¶] The claimant's breathing problems and foot swelling allegedly worsened in July 2015 pursuant to which she could not walk long distances (Ex. 8E2).

11

medication and was able to manage her own daily living." Following a discussion about the evidence of Plaintiff's physical impairments, including the opinion of the State Agency medical consultant (see AR 21-22), the ALJ wrote that "a limitation to a wide range of medium work is warranted as a prophylactic measure." (AR 22)

3. The ALJ's Assessment of Plaintiff's Testimony

As set forth below, the ALJ failed to provide legally sufficient reasons for discrediting Plaintiff's testimony about the intensity, persistence and limiting effects of her pain and symptoms.[8]

First, the ALJ failed to "specifically identify 'what testimony is not credible and what evidence undermines [Plaintiff's] complaints.'" Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007)(quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)); see also Smolen, 80 F.3d at 1284 ("The ALJ must state specifically what symptom testimony is not credible and what facts in the record lead to that conclusion").

Second, contrary to Defendant's assertion (see Joint Stip. at 19), the ALJ did not discount Plaintiff's testimony about her symptoms and limitations based on her ability to perform certain daily activities.

---

[8] The Court will not consider reasons for discounting Plaintiff's subjective symptom testimony that were not given by the ALJ in the decision (see Joint Stip. at 18-19). See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)("We are constrained to review the reasons the ALJ asserts."; citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) and Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001)); Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014)("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

12

After stating that "[plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" (AR 20), the ALJ only discussed Plaintiff's psychiatric impairments (AR 20-21) and physical impairments (AR 21-22). The only reference to Plaintiff's daily activities was in the ALJ's summary of Plaintiff's statements. See AR 19.

However, even if the ALJ had discounted Plaintiff's testimony about her symptoms and limitations related to her psychiatric impairments based on her ability to perform certain daily activities, such as preparing meals, doing laundry, vacuuming, walking, driving, going out alone, grocery shopping, handling money, watching television, and caring for her dog (see AR 19), this would not be a clear and convincing reason. See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)("[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled."); Reddick, supra ("Only if the level of activity were inconsistent with the Claimant's claimed limitations would these activities have any bearing on Claimant's credibility."). While a plaintiff's ability to spend a "*substantial part*" of his or her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting may be sufficient to discredit him or her, here, there is no evidence that Plaintiff was spending a substantial part of her day engaged in these activities or that the

physical demands of such tasks as preparing meals, doing laundry, vacuuming, walking, driving, going out alone, grocery shopping, handling money, watching television, and caring for her dog were transferable to a work setting. See Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014)("However, there is no indication here that the limited activities Ghanim engaged in, often with the help of a friend, either comprised a 'substantial portion' of Ghanim's day, or were 'transferrable' to a work environment."); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). Indeed, at the hearing, the ALJ did not ask Plaintiff about these activities.

It is not clear whether the ALJ considered Plaintiff's testimony about her limited abilities to perform such daily activities (see AR 303 [Plaintiff stated in the Function Report that she prepares microwaveable frozen food which takes her "a few minutes"], AR 50 [Plaintiff stated at the hearing that she only eats microwaveable food], AR 303 [Plaintiff stated in the Function Report that she does laundry two times a week which takes her 1/2 hour]; AR 303 [Plaintiff stated in the Function Report that she vacuums one time a week which takes her 1/2 hour], AR 304 [Plaintiff stated in the Function Report that she goes out, walking, driving a car, or riding in a car, for 1/2 hour only on "good days"], AR 37 [Plaintiff stated at the hearing that her friend drove her to the hearing], AR 304 [Plaintiff stated in the Function Report that every two weeks she goes grocery shopping which takes about 45 minutes], and AR 302 [Plaintiff stated in the Function Report that she feeds a dog]). Therefore, the degree to which Plaintiff could perform such daily activities may not have been inconsistent with her testimony regarding her symptoms and limitations. See Reddick, supra; see also Morgan v.

14

Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)("If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.").

Third, to the extent that the ALJ may have found there was a lack of objective medical evidence supporting Plaintiff's testimony concerning her symptoms and limitations, this factor cannot, by itself, support an adverse finding about Plaintiff's testimony. See Trevizo v. Berryhill, 862 F.3d 987, 1001 (9th Cir. 2017)(once a claimant demonstrates medical evidence of an underlying impairment, "an ALJ 'may not disregard [a claimant's testimony] solely because it is not substantiated affirmatively by objective medical evidence.'"; quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998); Blaine v. Berryhill, 2018 WL 6243089, *4 (D. Mont. Nov. 29, 2018)("The ALJ's conclusion that [the claimant's] testimony would only be accepted to the extent that her hearing testimony was 'consistent with the objective medical ... evidence' is the same as rejecting subjective symptom testimony to the extent that it is inconsistent with the objective medical evidence. Here, the ALJ treated consistency with the objective medical evidence as a necessary condition to credibility, *i.e.*, if a certain symptom is *consistent* with the 'other evidence' but *inconsistent* with the 'objective medical evidence' it is, according to the ALJ, not credible. By treating cconsistency with the objective medical evidence in this way, the ALJ essentially determined that it can be the sole ground for determining

15

that [the claimant's] symptom testimony is not credible, which is the precise practice the Ninth Circuit prohibits."); see also SSR 16-3p, 2017 WL 5180304, *7 ("We must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record.... However, we will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment related-symptoms alleged by the individual.").

Because the Court finds that the the ALJ did not discount Plaintiff's symptom testimony on legally permissible grounds, the Court is unable to defer to the ALJ's credibility determination. Cf. Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1464 (9th Cir. 1995)(the court will defer to the ALJ's credibility determinations when they are appropriately supported in the record by specific findings justifying that decision)(citations omitted).

Defendant asserts that any error by the ALJ in discounting Plaintiff's testimony was harmless (see Joint Stip. at 19). The Court disagrees. Since the ALJ did not provide reasons for discounting Plaintiff's testimony about her symptoms and limitations, the ALJ's error cannot be deemed "inconsequential to the ultimate nondisability determination." See Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006); Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008).

**B. Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman v. Apfel, 211 F.3d at 1179-81.

Since the ALJ failed to properly assess Plaintiff's symptom testimony, remand is appropriate. Because outstanding issues must be resolved before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects. Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014)(citations omitted).[9]

---

[9] The Court has not reached any other issue raised by Plaintiff except to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. "[E]valuation of the record as a whole creates serious doubt that Plaintiff is in fact disabled." See Garrison v. Colvin, 759 F.3d 995, 1021 (2014). Accordingly, the Court declines to rule on Plaintiff's claim regarding the ALJ's failures to properly develop the medical record and to properly consider the medical evidence of record in
(continued...)

17

**ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: August 16, 2019

<pre>
                                          /s/
                                     ALKA SAGAR
                            UNITED STATES MAGISTRATE JUDGE
</pre>

---

⁹ (...continued)
assessing Plaintiff's RFC (see Joint Stip. at 3-9). Because this matter is being remanded for further consideration, these issues should also be considered on remand.